IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNT OF JOHN HOHMAN AND LOUIS FAASS, EXECUTORS, .ETC., OF JOHN B. WASMER, DECEASED.

*Legacy — construction of a condition to which it is subject — when the condition will be held void as repugnant to the gift.*

One Wasmer died on August 7, 1875, leaving a will dated December 12, 1874, by the seventeenth clause of which he gave to his executors the sum of $3,000 in trust, to invest the same and apply the income thereof to the support and education of his nephew John B. Wasmer during his minority and during his father's life, and after his father's death to pay over the principal to the son. In case the nephew should die before his father the principal was to go to the nephew's children, if any; and if none, then to one Agnes Hohman. This clause further provided as follows: "This gift, bequest or benefit to said nephew John B. Wasmer, is made upon condition that his right to said sum, and to the income or interest thereof, is made dependent upon the condition that none thereof, or of the other property or moneys received by him under this will, shall be given, paid or loaned to his said father; and my executors, as such trustees, are authorized, and I order and direct, that before paying any of said income or interest thereof, or said sum itself, or any part thereof, or of either thereof, to my said nephew, they ascertain whether or not he has before then given, paid or loaned anything thereof, or of the other property or moneys received by him under this will, to his said father;" and in case he had so done, then he was to receive no more of such income, and none of the money, and the same was to be given to his children, if any, and if not to Agnes Hohman.

The clause then further read: "It is my will and intention that the father of my said nephew receive none of my estate. I give none to him by this will, and intend that none of my estate be given to him after its receipt by my said nephew John B. Wasmer, and therefore make the above condition, * * * but do intend to provide, and it is my will, that my said nephew's said father shall receive none of my estate, and for that reason make such condition." By the nineteenth clause he gave one-half of his residuary estate to his said nephew, "to have and to hold forever on the condition stated in the seventeeth item or division of this will as to giving, paying or loaning the same, or any property received under this will, to his said father."

The nephew died, unmarried and intestate, on January 26, 1877, aged sixteen years, leaving his father his only heir-at-law and next of kin.

*Held,* that the administrator of the nephew was entitled to receive the half interest in the residuary estate given to the nephew by the nineteenth clause.

That the condition that none of the money or property should be given, paid or loaned to the father referred to a voluntary and intentional gift, payment or loan, and was not intended to limit the disposition to be made thereof under the statute of distribution.

That if the condition should be held to be such as to defeat the legacy in case the father should be in a situation to take it under the statute, or in case any portion of it should be given to him by his son after the latter had received it, then the condition was void as repugnant to the gift.

That the same rule applied as to the devise of the residuary real estate.

*It seems*, that the condition providing that before paying over the different legacies to the nephew the executors should ascertain whether he had before then given, paid or loaned any part thereof to his father, and, if he had, prohibiting them from paying anything more to him, was valid.

APPEAL from a decree of the surrogate of Oneida county adjudging that a residuary devise and bequest to an infant vested in him, and that upon his death unmarried and intestate it passed to his heirs-at-law and next of kin.

On the 7th of August, 1875, John B. Wasmer, of Utica, died, leaving a last will and testament, dated December 12, 1874, which was admitted to probate by the surrogate of Oneida county on the 28th of September, 1875. By the second clause of said will the testator gave to his wife Mary his homestead and household property during her natural life, with an annuity of $600. By the sixteenth clause he gave the homestead and contents, subject to said life estate, to his nephew John B. Wasmer in case he should live to be thirty-five years of age and to his children if he should die before reaching that age and to Agnes Hohman if he should die childless before reaching that age. Said clause also provided that after the decease of testator's wife, if she should survive him, otherwise from his own decease, the said nephew should have, use and enjoy the homestead, furniture, etc., during his natural life if he died before the age of thirty-five or until he became thirty-five, if he should live so long. By the seventeenth clause he gave to his executors the sum of $3,000 in trust to invest the same and apply the income to the support and education of said nephew during his minority and upon his becoming of age, if his father should then be living, said nephew was to receive the income of said sum during the life of his father, and upon his father's death, the principal. If the nephew should die before his father, leaving children, then the principal was to be paid to them. If the nephew should die childless, before his father, the principal was to go to said Agnes Hohman. The remainder of said clause is in these words: " This gift, bequest or benefit to said nephew John B. Wasmer is made upon

condition that, and his right to said sum, and to the income or interest thereof, is made dependent upon the condition, that none thereof or of the other property or moneys received by him under this will shall be given, paid or loaned to his said father; and my executors, as such trustees, are authorized and I order and direct that before paying any of said income or interest thereof, or said sum itself, or any thereof, or of either thereof, to my said nephew, they ascertain whether or not he has before then given, paid or loaned anything thereof, or of the other property or moneys received by him under this will to his said father, and if he shall have so paid, given or loaned any thereof to his said father, it is my will, and I order and direct that he receive and be entitled to receive no more of such income or interest, and none of such sum of money; but that same go and it is my will if said nephew leave child or children him surviving, it go to, and I order and direct my said executors to pay same to such children, equally share and share alike; and if my said nephew John B. Wasmer in such case leave no children him surviving, that same and all thereof belong to and be paid to my said adopted daughter Agnes Hohman as her sole and separate property. It is my will and intention that the father of my said nephew receive none of my estate. I give none to him by this will, and intend that none of my estate be given to him after its receipt by my said nephew John B. Wasmer, and therefore make the above condition.   But I do not object nor make any condition concerning my said nephew's giving, paying or loaning any moneys, he by his own labor shall earn or accumulate, to his said father, nor in the least wish to prejudice my said nephew against his said father; but do intend to provide, and it is my will that my said nephew's said father receive none of my estate, and for that reason make such condition."

By the nineteenth clause said testator gave one-half of all the rest and residue of his estate, real and personal, to his said nephew, "to have and to hold forever on the condition stated in the seventeenth item or division of this will, as to giving, paying or loaning same, or any property received under this will, to his said father."   By the twentieth clause he gave "all the rest and residue" to his adopted daughter Agnes Hohman.

John Hohman and Louis Faass were named as executors and,

upon probate of the will, duly qualified. The testator's wife died November 29, 1879, and his nephew, who never married, died January 26, 1877, aged sixteen years. Jacob Wasmer, testator's brother, and the father of his said nephew, is still living, as is also his adopted daughter Agnes Hohman. No letters of administration have been issued upon the estate of the said nephew.

On the 1st of March, 1883, the executors filed their accounts, and a decree was made by the surrogate, which, among other things, directed payment to Agnes Hohman of the legacy named in the seventeenth clause of said will, and also the sum of $4,451.41, and that a like sum should be paid to the surrogate to abide his decision in regard thereto. The executors were, on making such payments, to be discharged from all further liability, except as to a trust fund of $1,500 not material on this appeal. On the 18th of December, 1883, a supplementary decree was made adjudging that said sum so deposited with the surrogate should be retained by him until the appointment of a personal representative of said John B. Wasmer, deceased, nephew of said testator, and that upon such appointment being made the surrogate pay over to him said sum, with all accumulations of interest.

From the decree last named the executors and Agnes Hohman appealed to this court.

*R. W. McIncrow*, for Agnes Hohman and John Hohman, and Louis Faass, executors, appellants.

*F. C. Fincke*, for Jacob Wasmer, respondent.

VANN, J.:

The only question presented by the learned counsel for the appellants in his brief or argument is whether Agnes Hohman, or the personal representative of John B. Wasmer, the deceased nephew of the testator, is entitled to the sum of $4,451.41, deposited with the surrogate of Oneida county. That sum represents one-half of the residuum of the estate bequeathed by the nineteenth clause of the will to said John B. Wasmer, the other half having already been paid over to Agnes Hohman under the twentieth clause. As said John B. Wasmer left no child, descendant or widow, and had not reached the age required by statute to bequeath per-

sonal estate, his father would be entitled to the surplus remaining after payment of debts. (3 R. S. [7th ed.], 2285, § 21; 2304, § 75, sub. 7.) The real estate would also be inherited by his father. (Id., 2210, §§ 1–5.)

The appellants contend that the seventeenth and nineteenth clauses of the will, when construed together, show a clear and determined intention on the part of the testator to allow no portion of his estate, under any circumstances, to be given to his brother Jacob Wasmer, father of said John B. Wasmer.

The respondents contend that Jacob Wasmer takes nothing directly from the estate of the testator, but that he takes the estate of his deceased son by the paramount force of the statutes of descents and distributions, and that thus he is entitled to any vested interest of his son under the will in question.

By the nineteenth clause of the will there is first a gift, absolute in form, followed by a condition subsequent, the effect of which is not to prevent the immediate vesting of the legacy, but, upon the happening of an uncertain event, to divest and determine the title of the legatee. The gift in terms describes a present vested interest. No words of futurity are used. No time of payment or performance is annexed to the substance of the legacy. There is no intimation of any desire to suspend or postpone its operation. If it did not vest upon the death of the testator when could it vest? If the nephew were living now can there be any doubt that it would be payable to him? But why, unless it had vested at the testator's death? What event has since happened to cause it to vest? The law favors the vesting of estates, and the general rule is that property which is the subject of any disposition, whether testamentary or otherwise, will belong to the object of the gift from the instant that the instrument takes effect. (2 Jarman on Wills [5th ed.], 799; Wms. on Exrs. [7th ed.], 1223.)

The language used imports a devise in fee of one-half of the residue of the real estate, and a bequest of one-half of the residue of the personal estate, as an immediate gift. While the amount could not be ascertained, and hence not paid over or delivered until after the debts were discharged and other provisions of the will executed, yet the title to the residuary estate vested the moment that the testator died. "Although the residuary legatee dies

before the payment of debts, and before the amount of the surplus is ascertained, yet it shall devolve on his personal representative." (Wms. on Exrs., 1454; *Brown* v. *Farndell*, Carth., 52; *Bayley* v. *Bishop*, 9 Ves., 6; *Tucker* v. *Ball*, 1 Barb., 94; *Sweet* v. *Chase*, 2 N. Y., 73; *Bell County* v. *Alexander*, 22 Texas, 350.) The legacy, therefore, upon the testator's death became the property of the legatee, with all the ordinary incidents and attributes of property, and he could have given good title to the same upon transfer had he been of age. (*Patterson* v. *Ellis*, 11 Wend., 259; *Arcularius* v. *Geisenhainer*, 3 Bradf., 64; *Pinney* v. *Fancher*, Id., 198; *Ennis* v. *Penty*, Id., 382; 2 Redf. on Wills, 249.) It vested, however, subject to a condition. The condition contained in the nineteenth clause of the will when read in connection with that contained in the seventeenth, to which it refers, is that none of the money or property received by said John B. Wasmer under said will should be "given, paid or loaned" by him to his father. No other condition is specified in either clause. No other limitation is placed upon the disposition to be made by the legatee of the legacy or its proceeds. No attempt is made to limit its disposition by the statutes of descents or distributions, or of its transfer by sale on legal process, even if in favor of the father of the legatee. The condition implies some act on the part of the nephew, a voluntary and intentional gift, payment or loan. There is an important and essential distinction between compulsory and voluntary alienation. (*Rochford* v. *Hackman*, 9 Hare, 475.)

The nineteenth clause is in express terms made subject to the condition contained in the seventeenth as to giving, paying or loaning, and if in fact the latter clause contained any other condition the former would not be subject to it. There is an express limitation to the condition specified. No effect is therefore to be given to the language of the seventeenth clause, preceding the condition, and which forms no part of it. That language relates to the creation of a trust and the disposition of a trust fund in certain contingencies, whether the condition was kept or not.

The condition itself, as set forth in the seventeenth clause, prescribes no contingency upon which the nephew shall cease to enjoy, except his giving, paying or lending to his father.

The subsequent general declaration of the testator's intention

"that the father of my said nephew receive none of my estate ; I give none to him by this will, and intend that none of my estate be given to him after its receipt by my said nephew," does not add to or change the condition. It merely adds emphasis to the direction that the nephew should not give, pay or loan any part of his inheritance to his father. If it means more than this, why does it not make every legacy in the will conditional? It cannot be contended that Mrs. Hohman and other legatees are prohibited from giving their part to Jacob Wasmer, although the general terms used would indicate such an intention, unless they are limited by the specific definition of the condition which precedes such use. Recent cases are emphatic in holding that where an estate is given in one part of a will in clear and decisive terms, it cannot be taken away or cut down by any subsequent words, even when a part of the same clause, if they are not as clear and decisive, both in meaning and application, as the words giving the estate. (*Roseboom* v. *Roseboom*, 81 N. Y., 356–359 ; *Clarke* v. *Leupp*, 88 N. Y., 228 ; *Campbell* v. *Beaumont*, 91 N. Y., 464 ; *Thornhill* v. *Hall*, 2 Clark & Fin., 22.) But assume that the testator intended to provide, as a part of the condition, that the property given to the nephew by the will should not, upon the nephew's death, be inherited by his father, and it will not aid the appellants. It would, in effect, provide that the heir-at-law and next of kin of the nephew could not inherit from him property that he owned. Such a condition would be void. It would be an attempt not only to subvert the statutes of descents and of distributions, but to deprive property of an essential attribute, such as the right of transfer. There is a point beyond which a testator cannot go in disposing of his estate. He cannot give a sum of money to another for his own use and benefit and yet control the use to be made of it. Such a condition would be inconsistent with the nature of the gift and void for repugnancy.

Legacies upon the following conditions, with a gift over in case of violation, have been held void : if the legatee should die without making any disposition of the legacy (*Green* v. *Harvey*, 1 Hare, 428 ; *Watkins* v. *Williams*, 3 Mac. & G., 622 ; *Hughes* v. *Ellis*, 20 Beav., 193 ; *Sevier* v. *Brown*, 2 Swan [Tenn.], 112) ; if he should omit to make a will (*Weale* v. *Ollive*, 32 Beav., 421) ; if he should not

alienate within a given time (*Shaw* v. *Ford*, 7 Ch. D., 669); if he should sell to any but a certain person named (*Muschamp* v. *Bluet*, J. Bridgm., 132, 137; *Schermerhorn* v. *Negus*, 1 Den., 448; *Attwater* v. *Attwater*, 18 Beav., 330); if he should not spend both principal and interest during his lifetime (*Henderson* v. *Cross*, 29 Beav., 216); if he should anticipate the dividends of a fund (*Rishton* v. *Cobb*, 5 Myl. & Cr., 132); if he should attempt to dispose of the principal (*Bradley* v. *Peixoto*, 3 Vesey, Jr., 324; *Graham* v. *Lee*, 23 Beav., 388; *In re Payne*, 25 id., 556); if the land should not be forever leased, or cultivated in a particular mode (*Attorney General* v. *Catherine Hall*, Jacob, 380, 395; 2 Redfield on Wills, 287); if the devisee should offer to mortgage the estate (*Ware* v. *Cann*, 10 B. & Cr., 433); if the devisee should continue to inhabit a certain town. (*Newkerk* v. *Newkerk*, 2 Caines, 345.)

So where there was a devise in fee with a condition that the wife of the devisee should not be endowed or the husband become tenant by the courtesy, or that no annuity should be charged upon the estate. (*Portington's Case*, 10 Co. Rep., 35 *a.*; *Mildmay's Case*, 6 Co. Rep., 40.*a.*; *Willis* v. *Hiscox*, 4 Myl. & Cr., 197, 201.) A condition that the land shall not be subject to conveyance or attachment is void. (*Blackstone Bank* v. *Davis*, 21 Pick., 42.)

In *Williams* v. *Jones* (2 Swan [Tenn.], 620) the testator's will contained the following provisions : "I loan to my beloved wife Martha Williams the following property, to wit" (sundry slaves), "during her natural life," and all his other property after paying his debts. "The condition of the above loan is such, that if the said Martha Williams should think proper to marry or dispose of this property in any manner whatever so that Thomas Jones, Margaret Jones, Rebecca Andrews, Elizabeth Jones, nor either of them, nor their heirs, shall never enjoy any of the above named property, nor money, nor have anything to do with it in any manner whatever, then the above loan to be void, or else stand in full force and virtue. It is my desire that no misconstruction be laid on this my last will and testament so as to deprive my wife Martha Williams of a *bona fide* title to the above named property and the increase thereof forever ; provided that she should manage it in such manner that neither of the above mentioned " (persons), " nor neither of their heirs shall never inherit any part of my estate.   But if she should

not dispose of this property so as to deprive" (said persons) " nor their heirs, then this loan to take effect." The widow sold some of the slaves to the prohibited persons and bequeathed the rest, with the increase, to the same persons or their children. Charles Williams, sole heir-at-law and next of kin of the testator, filed a bill to recover the slaves; *held*, that under the will the widow took an absolute estate which she might dispose of by will or deed to the excluded persons or others at her pleasure.

The same rule governs both real and personal estate, as will be seen by examining the authorities cited. (See, also, 2 Redfield on Wills, 288; *In re Yalden*, 1 De G. M. & G., 53; *In re Mortlook's Trust*, 3 Kay. & J., 456; *Martin* v. *Martin*, 12 Jur. [N. S.], 889.)

Conditions are not sustained when they infringe upon the essential enjoyment and independent right of property and tend manifestly to public inconvenience, such as the difficulty of ascertaining how much was left when the condition was broken and the danger of dealing with property that lacks some of the essential qualities of property. (*Bradley* v. *Peixoto*, 3 Vesey, Jr. [Sumners' ed.], 324, note *a*.) The principle upon which these cases rest is that the condition is repugnant to the gift and therefore void.

If, then, the nineteenth clause of the will is subject to the condition that the estate, real or personal, given thereby is to be defeated, provided the father of the legatee should otherwise be in a situation to inherit it from him, or provided, after it was paid over to the legatee, he should give any part of it to his father, the condition is void. The gift would stand, but the condition would be rejected.

So far as the condition provides that before paying over the different legacies to the nephew the executors should ascertain whether he had "before then given, paid or loaned anything thereof or of the other property or moneys received by him under this will to his said father," and if he had, prohibiting them from paying any more to him and directing that it be paid to some one else, it is doubtless valid. This, we think, is what the testator meant, or what the language used by him means. The condition, when thus construed, was never violated by the nephew. He could not legally have violated it owing to his age at the time of his death. He died owning one-half of the residue of the estate, both real and personal, and the statute transferred his title to his heir-at-law and next of kin. It

was, however, the estate of the nephew, not of the testator, when thus transferred. The father takes, in legal effect, not from the estate of the testator, but from the estate of his own son, and not by the act of his son, but by operation of law.

The decree of the surrogate's court should be affirmed, with costs.

HARDIN, P. J., and FOLLETT, J., concurred.

The decree of the surrogate of Oneida county affirmed, with costs against the appellants.